**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| HUGO BOSS AG,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Civil Action No. 1:26-cv-2585<br><br>JURY TRIAL DEMAND |

**COMPLAINT**

Plaintiff Hugo Boss AG ("Plaintiff"), by and through undersigned counsel, hereby files its Complaint against Defendants, The Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A"[1] hereto (collectively, the "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1) Defendants are promoting, selling, reproducing, offering for sale, and distributing goods using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through various Internet based e-commerce stores and fully interactive commercial Internet websites operating under the seller identification names set forth on Schedule "A" hereto (the "Seller IDs").

2) Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The

[1] Schedule A lists Defendant's identifying information (Merchant Name, Merchant ID, Product ID) and the corresponding use of Plaintiff's Intellectual Property.

natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which they operate.

3) To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

**THE PARTIES**

4) Plaintiff Hugo Boss AG is a German corporation based in Metzingen, Germany.

5) The currently-known Defendants are comprised of individuals, business entities of unknown makeup, or unincorporated associates, each of whom, on information and belief, likely reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in these locations, including those identified by name or alias on the attached Schedule "A" (collectively, "Defendants").

6) Defendants operate through domain names and interactive virtual storefronts (the "Infringing Storefronts") on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, eBay, and Walmart (each a "Marketplace" and collectively, the "Marketplaces").

7) Each Defendant is known to Plaintiff only by its unique Marketplace name and ID number.

8) Defendants offer their products for sale to consumers in the United States, including this District, and, on information and belief, have sold and continue to sell products (the "Infringing Products") which violate Plaintiff's intellectual property rights to consumers within the United States, including within Texas and the Western District of Texas.

9) Through their illegal operations on the Infringing Storefronts, Defendants are directly and personally contributing to, inducing, and engaging in the sale of Infringing Products, and on information and belief, are doing so often as partners, co-conspirators, or suppliers.

10) On information and belief, Defendants are an interrelated group working in concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

11) Defendants conceal their identities and the full scope of their infringing operations to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' infringing operation. The true identities of many of these Defendants are presently unknown.

## **JURISDICTION AND VENUE**

12) This is an action for trademark infringement in violation of 15 U.S.C. § 1114 and false designation of origin in violation of 15 U.S.C. § 1125(a), seeking damages, injunctive relief, and other remedies provided by law.

13) This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*; 28 U.S.C. § 1338(a)-(b); and 28 U.S.C. § 1331.

14) This Court has personal jurisdiction over Defendants because each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas

residents by offering shipping to Texas, and, on information and belief, has induced sales of Infringing Products to residents of Texas in violation of Plaintiff's intellectual property rights. As such, personal jurisdiction is proper because each Defendant is committing infringing acts in Texas and has wrongfully caused Plaintiff substantial injury in the State of Texas.

15) This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise under federal law; the Defendants are, on information and belief, not subject to jurisdiction in any state's courts of general jurisdiction; and exercise of such jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2).[2] Personal jurisdiction is thus also proper pursuant to Rule 4(k)(2) because each of the Defendants directs its activities at residents of the United States and the State of Texas.

16) Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants are entities or individuals subject to personal jurisdiction in this District, and Defendants not residing in the United States may be sued in any judicial district.

## **RELEVANT FACTS**

17) Plaintiff is a leading global fashion and lifestyle company offering high-quality women's and men's apparel, shoes, and accessories (the "HUGO BOSS Products") under its trademarks. Founded in 1924 by Hugo Ferdinand Boss, Plaintiff maintains a portfolio currently consisting of two strong brands: BOSS and HUGO. Though both brands are uniquely defined; they share equally high standards of quality, innovation, and sustainability. The HUGO BOSS brand includes a diverse product portfolio that spans from professional to luxury wear.

[2] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction"). Specific jurisdiction only requires a defendant to have "minimum contacts" with the state, rather than the "continuous and systematic" standard for general jurisdiction—the defendant need only purposefully direct its activities at residents of the forum, and the plaintiff's alleged injury must arise out of or relate to the defendant's contacts with the forum. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014).

18) Plaintiff sells its genuine HUGO BOSS Products through the company's website[3] and authorized wholesalers and retailers.[4] HUGO BOSS Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards. Among the purchasing public, genuine HUGO BOSS Products are instantly recognizable as such. In the United States and around the world, the HUGO BOSS brand has come to symbolize high quality, and the HUGO BOSS Products are among the most recognizable fashion brands in the United States.

19) Among Plaintiff's most important assets is the intellectual property associated with its HUGO BOSS brand. Specifically, Plaintiff is the owner of several U.S. trademarks used to identify the products that it markets, sells, and licenses. Plaintiff distributes and retails its high-quality apparel and accessories within Texas under the federally registered trademarks listed below. Defendants' sales of the counterfeit items in violation of Plaintiff's intellectual property rights are irreparably damaging Plaintiff.

20) Plaintiff has registered its trademarks with the United States Patent and Trademark Office, including the following trademarks which are referred to as the "HUGO BOSS Trademarks", and uses them in connection with the advertisement, design, distribution, offer for sale, and sale of its HUGO BOSS Products.

| **Registration Number:** | **Trademark:** | **Goods and Services** |
|---|---|---|
| 2,429,018 | BOSS | IC: 025 |
| 2,303,080 | BOSS | IC: 025 |
| 2,927,139 | BOSS | IC: 025 |
| 1,472,180 | BOSS | IC: 014 |
| 3,303,022 | BOSS | IC: 014, 016, 018, 022, 025, 028 |
| 1,023,305 | BOSS | IC: 025 |

[3] http://www.hugoboss.com
[4] Plaintiff has licensed the HUGO BOSS Trademarks to select licensees, who pay royalties on their retail and wholesale sales.

| Registration Number: | Trademark: | Goods and Services |
|---|---|---|
| 7,164,797 | BOSS | IC: 009, 014, 016, 018, 020, 024, 025, 035 |
| 7,495,730 | BOSS | IC: 012, 018, 021, 025, 035 |
| 2,590,289 | BOSS HUGO BOSS | IC: 025 |
| 1,614,935 | BOSS HUGO BOSS | IC: 025 |
| 1,531,899 | BOSS HUGO BOSS | IC: 014, 025 |
| 2,950,843 | BOSS HUGO BOSS | IC: 014, 025, 035 |
| 2,712,748 | BOSS HUGO BOSS | IC: 025 |
| 4,326,296 | BOSS HUGO BOSS | IC: 009, 014 |
| 2,361,234 | HUGO | IC: 025 |
| 7,057,948 | HUGO | IC: 014, 016 |
| 7,743,445 | H G O | IC: 025, 035 |
| 7,057,901 | HU GO | IC: 009, 014, 016, 018, 024, 025, 035 |
| 1,624,938 | HUGO BOSS | IC: 025 |
| 1,594,225 | HUGO BOSS | IC: 018 |
| 3,676,667 | HUGO BOSS | IC: 016 |
| 2,419,483 | HUGO BOSS | IC: 016 |
| 4,857,232 | HUGO BOSS | IC: 009, 016, 021 |
| 3,013,444 | HUGO BOSS | IC: 014 |
| 2,447,282 | HUGO HUGO BOSS | IC: 025 |

21) The above U.S. registrations for the HUGO BOSS Trademarks are valid, subsisting, and in full force and effect. The registrations for the HUGO BOSS Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the HUGO BOSS Trademarks pursuant to 15 U.S.C. § 1057(b). The HUGO BOSS Trademarks have been

continuously used and never abandoned since their first use. True and correct copy of the U.S. Registration Certificates for the above-listed trademarks are attached hereto as **Exhibit 1**.

22) Plaintiff's HUGO BOSS Trademarks have been used in the United States in connection with the advertisement, design, distribution, and offer for sale of its HUGO BOSS Products. The HUGO BOSS Trademarks have become synonymous with the company's exacting quality standards for its fashionable apparel and accessories. The HUGO BOSS Trademarks are distinctive, signifying to the purchaser that HUGO BOSS-branded products come from Plaintiff to its exacting quality standards. The HUGO BOSS Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the HUGO BOSS Trademarks is of incalculable and inestimable value to Plaintiff.

23) Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the HUGO BOSS Trademarks. As a result, products bearing the HUGO BOSS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. The HUGO BOSS Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the HUGO BOSS brand have made the HUGO BOSS Trademarks invaluable assets of Plaintiff.

24) The success of Plaintiff's brand has resulted in significant infringement and counterfeiting.

25) Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the HUGO BOSS Trademarks, including its exclusive right to use and license such intellectual property and their associated

goodwill. In addition to Plaintiff's global sales and international use of the HUGO BOSS Trademarks, Defendants have notice of Plaintiff's claim to ownership from its federal registrations of the same. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the HUGO BOSS Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet.

26) Plaintiff recently identified the HUGO BOSS Trademarks being used without authorization on Infringing Products on the Infringing Storefronts. These stores are designed to resemble authorized Internet retail stores.

27) Defendants' use of one or more of the HUGO BOSS Trademarks in connection with the advertising, marketing, distribution, offering for sale, and sale of the Infringing Products is likely to cause and has already caused confusion, mistake, and deception among consumers and is irreparably harming Plaintiff.

28) Defendants have manufactured, imported, distributed, offered for sale, and sold Infringing Products in connection with one or more of the HUGO BOSS Trademarks and continue to do so.

29) Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use one or more of the HUGO BOSS Trademarks in connection with the advertisement, offer for sale, and sale of the Infringing Products, through, inter alia, the Internet. The Infringing Products are not genuine Plaintiff Products. Plaintiff did not manufacture, inspect, or package the Infringing Products and did not approve the Infringing Products for sale or distribution. Each Infringing Storefront offers shipping to the United States, including Texas, and, on information and belief, each Defendant has sold Infringing Products into the United States, including Texas.

30) Defendants create numerous Defendant Internet Stores and design these stores to appear to be selling genuine HUGO BOSS Products, while they actually sell counterfeits of Plaintiff's HUGO BOSS Products. Defendant Internet Stores share unique identifiers, such as common design elements, the same or similar counterfeit products that they offer for sale, similar counterfeit product descriptions, the same or substantially similar shopping cart platforms, accepted payment methods, check-out methods, lack of contact information, and identically or similarly priced counterfeit products and volume sale discounts. As such, the Defendant Internet Stores establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same transaction or occurrence.

31) Upon information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the seller aliases shown in Schedule "A", and Plaintiff has reason to believe additional aliases exist but are not yet known to Plaintiff. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

32) Counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in online chat rooms, such as QQ.com, and also communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

33) Counterfeiters, such as Defendants here, maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of

U.S. courts to avoid payment of any monetary judgment awarded. Upon information and belief, offshore counterfeiters regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of U.S. courts.

34) Upon information and belief, Defendants also deceive unknowing customers by using the HUGO BOSS Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's HUGO BOSS branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down.

35) Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information.

36) Defendants' use of the HUGO BOSS Trademarks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the infringing products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

37) Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the HUGO BOSS Trademarks unless preliminarily and permanently enjoined.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING

## (15 U.S.C. § 1114)

38) Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39) Each Defendant is using in commerce one or more reproductions, counterfeits, copies, or colorable imitations of the HUGO BOSS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the source or origin of each Defendant's goods.

40) Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the HUGO BOSS Trademarks without Plaintiff's permission.

41) Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's trademarks and are willfully infringing and intentionally using Plaintiff's trademarks in connection with counterfeit items. Defendants' willful, intentional, and unauthorized use of the HUGO BOSS Trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

42) Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43) Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

44) The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's HUGO BOSS Products.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

45) Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 44.

46) Defendants' advertising, marketing, promotion, distribution, display, offer for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

47) Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

48) By using Plaintiff's trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product.

49) Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

50) As a direct and proximate result of Defendants' wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

51) Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

i. Using the HUGO BOSS Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with the HUGO BOSS Trademarks;

ii. Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from the HUGO BOSS Trademarks;

iii. Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe the HUGO BOSS Trademarks;

iv. Committing any acts calculated to cause consumers to believe that Defendants' counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v. Further infringing the HUGO BOSS Trademarks and damaging Plaintiff's goodwill;

vi. Otherwise competing unfairly with Plaintiff in any manner;

vii. Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

viii. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the HUGO BOSS Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the HUGO BOSS Trademarks; and,

x. Registering any additional domain names that use or incorporate any portion of the HUGO BOSS Trademarks; and,

B. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. Displaying images protected by the HUGO BOSS Trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the HUGO BOSS Trademarks; and

ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the HUGO BOSS Trademarks, or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C. That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D. Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including AliExpress, Amazon, Shopify, Temu, Tik Tok, and Walmart; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, Twitter; Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of counterfeit products using the HUGO BOSS Trademarks shall:

i. Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's trademarks, including any accounts associated with the Defendants listed on Schedule A;

ii. Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's trademarks and;

iii. Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E. That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F. For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's trademarks in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G. For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

I. That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J. That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

K. Plaintiff demands trial by jury as to all causes of action so triable.

Dated: September 18, 2026

Respectfully submitted,

/s/ James E. Judge
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com